## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DAJHON AMARIA BOSTIC | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CASE NO.: 25-cv-3056-JWL** |
| | ) | |
| WYANDOTTE COUNTY | ) | |
| POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## *MARTINEZ* REPORT

**COMES NOW**, undersigned counsel for Interested Parties Wyandotte County Sheriff's Office and the Kansas Highway Patrol, and in accordance with the Court's Order on May 13, 2025 [DOC. 7], submits the following *Martinez* Report as an aid to the Court in further screening the merits of Plaintiff's (Bostic's) claims. This report is based upon audio and video recordings, and official internal facility and law enforcement documentation.

## Introduction

Plaintiff has filed a pro se complaint pursuant to 42 U.S.C. § 1983. His claims arose when he was arrested on February 10, 2024. The Court found that proper processing of Plaintiff's excessive force claim requires additional information from WCJ and KHP officials and ordered the submission of this report to aid in the process.

**Summary of Allegations**

Plaintiff alleges that "[o]fficer's [sic] of the Kansas City, Kansas Wyandotte County police department used unnecessary excessive force by tazing [sic] me when I complied to 'stop' and was given a direct order to stop running, then ripped and yanked the tazer [sic] prongs improperly, and forcefully out of my body which led to E.M.S. rejecting medical assistance on the scene and gave me permanent markings on the body." [DOC. 5 at 2].

**Investigation**

A review of the relevant law enforcement reports, internal facility documentation and audio and video recordings, have been compiled, and now are submitted to the Court as Exhibits, either attached hereto or filed conventionally, and incorporated as if fully set forth herein.  Based upon the foregoing inquiry, the findings and conclusions are rendered below and cited to each supporting Exhibit.

**FINDINGS OF FACT**

1.     At around 10:55pm on February 10, 2024, the Kansas City, MO Police Department ("KCMO PD") announced on a mutual aid radio channel that KCMO PD was pursuing a vehicle for Aggravated Assault of a law enforcement officer. (Exhibit 1)

2.     The vehicle being pursued was a black Kia Sorento. (Exhibit 1)

3.     The driver of the vehicle was later identified as Da'Jhon A. Bostic. (Exhibit 1)

4.      In pursuit of the vehicle, Master Trooper Garcia of the Kansas Highway Patrol ("KHP") observed the vehicle swerve to avoid Stop Sticks placed by KHP Lieutenant Ramirez. (Exhibit 1).

5.      During the pursuit, KHP Trooper Irwin was exiting Kaw Drive from eastbound I-70 and saw the Kia driving the wrong way down the street with its headlights deactivated. (Exhibits 1, 2, and 3).

6.      Trooper Irwin, taking into account that this was "a black-colored vehicle, traveling the wrong way on I-70, with inoperable headlamps, and under the cover of darkness" conducted a legal intervention with his vehicle, "striking [the Kia] on the front right quarter panel." (Exhibits 2 and 3).

7.      After disabling the Kia, Trooper Irwin witnessed Bostic exit the driver's seat of the car and run eastbound. (Exhibit 3).

8.      Trooper Irwin exited his patrol vehicle, identified himself as a police officer, and commanded Bostic to "stop." (Exhibit 3).

9.      Master Trooper Garcia also pursued Bostic through a grassy area off of the highway ramp and down a hill. (Exhibit 1).

10.      During the chase, Master Trooper Garcia and Trooper Irwin witnessed Bostic fall to the ground and immediately get back up. (Exhibits 1 and 3).

11.      When Bostic got back up, Master Trooper Garcia tased him with his KHP-issued taser, which was effective in causing Bostic to fall to the ground. (Exhibit 1).

12.    Kansas City, MO ("KCMO") KCMO police officer (FNU) Solomon arrived on the scene just as Bostic was tased. (Exhibit 6).

13.    Officer Solomon's body-worn camera ("BWC") footage shows officers ordering Bostic, "Get on the ground!" (Exhibit 6).

14.    Officer Solomon's BWC footage shows that Bostic did not immediately comply with the order. (Exhibit 6).

15.    Officer Solomon's BWC footage shows that an officer announced to Bostic that Bostic was going to be tased. (Exhibit 6).

16.    Officer Solomon's BWC footage shows that Bostic was then tased. (Exhibit 6).

17.    KCMO police officer Robert Ridgley arrived on the scene after Bostic had been tased. (Exhibit 4).

18.    When Officer Ridgley arrived on the scene, he exited his car and chased Bostic by foot, running through a grassy area and a thicket to find Bostic already tased and on the ground. (Exhibit 4).

19.    KCMO police officer Justin Wood also arrived on the scene after Bostic was tased and was on the ground. (Exhibit 7).

20.    According to Officer Wood's BWC footage, an officer said to Bostic "yeah we had to tase you, you wouldn't listen." (Exhibit 7).

21.     According to Officer Ridgley's and Officer Solomon's BWC footage, officers restrained Bostic on the ground after he was tased in order to handcuff him. (Exhibits 4 and 6).

22.     According to the Officers' BWC footage, before the taser prongs were removed, Bostic said, "Wooooo! Take that out please. That shit hurts. That shit hurts, bro." (Exhibits 5, 6, and 7).

23.     Immediately afterwards, Officer Wood's BWC footage appears to show Officer Wood assisting in removing at least one of the taser prongs. (Exhibit 7).

24.     According to Officer Ridgley's BWC footage, Bostic stated, "I lost my phone, man. Can you please find it?" (Exhibit 5).

25.     The officers present declined to help find Bostic's phone. (Exhibit 5).

26.     According to Officer Ridgley's BWC footage, as the officers were walking Bostic back to the highway, Bostic remarked "Why did he tase me? Who tased me? I literally stopped for y'all." (Exhibit 4).

27.     According to Officer Ridgley's BWC footage, Bostic also said "I was driving crazy but I did not try to hit you guys." (Exhibit 4).

28.     A short time after arriving back at the highway, an Emergency Medical Technician ("EMT") from the Kansas City, Kansas Fire Department had arrived to check Bostic and the two passengers from the Kia. (Exhibit 5).

29.     An officer remarked to the EMT that, according to protocol, "we already got the prongs [of the taser] out." (Exhibit 5).

30.     KHP Trooper Gustavo Ramirez's dash cam also captured the conversation with the EMT. (Exhibit 9).

31.     Bostic did not appear to complain to the EMT on the scene of any particular pain, injuries, or discomfort. Officer Ridgley's BWC footage and Trooper Ramirez's dash cam footage do not capture any such complaints to the EMT. (Exhibits 5 and 9).

32.     The EMT left shortly afterwards. (Exhibits 5 and 9).

33.     KHP Trooper Gustavo Ramirez checked over and took pictures of Bostic, who told Ramirez that both taser prongs had struck him in the chest. Bostic said, "They were both in my chest." (Exhibit 5 and 9).

34.     Trooper Ramirez took pictures of the injuries on Bostic's chest caused by the taser prongs, which show a small amount of blood on his lower left abdomen. (Exhibit 8).

35.     While this was happening, officers were searching the Kia for Bostic's phone, which Bostic claimed had his identification. (Exhibit 5).

36.     Officers found a phone in the car that apparently had a picture of Bostic on it, but did not have his identification attached to the back, which is where Bostic had specified it would be located. (Exhibit 5).

37.     Later, according to Officer Ridgley's BWC footage, in response to an officer saying "you drove the wrong way," Bostic responded "I did, I didn't realize it though." (Exhibit 5).

38.     According to Officer Ridgley's BWC footage, Bostic appears to have said "I wasn't really trying to hit you guys. I was really trying to play with you guys." (Exhibit 5).

39.     Bostic was transported to the Wyandotte County Adult Detention Center ("WCADC") by Kansas City, Kansas Police Officer Corgiat and booked in the WCADC on February 11, 2024 at 12:30am for (1) Fleeing or attempting to elude a law enforcement officer, 1st conviction; (2) Aggravated assault of LEO; Use of a deadly weapon; (3) Interference with LEO; Obstruct or resist in misdemeanor case; (4) Possession of stolen property; Value $1,000 to $25,000; and (5) Criminal possession of a firearm by felon. (Exhibits 11 and 12).

40.     KHP Lieutenant Gustavo Ramirez reviewed Master Trooper Garcia's deployment of his taser during the chase, noting that "[a]ll monitors were activated during this incident;" "[t]here is no audio since [Trooper] Eddings [was] in training and wore the mic pack;" and that "[t]he Use of Force occurred outside of the patrol camera's view and is not visible." Lieutenant Ramirez also stated that "I observed no violations of KHP Policy and Procedure or Kansas State Law." Lieutenant Ramirez concluded that the "force used by [Master Trooper] Garcia was reasonable, appropriate, and necessary to take the resistant suspect into custody, protect himself, and prevent the suspect from fleeing." (Exhibit 10; *see also* Exhibit 13).

## <u>FINDINGS REGARDING PLAINTIFF'S ALLEGATIONS</u>

**Allegation**: *That police officers unnecessarily tased Bostic when he was already complying with their commands to stop.*

**Findings**: WCSO and KHP do not have clear video footage of the moments immediately before Bostic was tased, although Officer Solomon's BWC footage captures some of those moments. Numerous BWCs, dash-board cameras, and reports showed that Bostic was running away from law enforcement officers at least seconds and up to immediately before he was apprehended by KHP officers and tased by Master Trooper Garcia. Bostic was ordered multiple times to stop by identified law enforcement officers, and immediately before he was tased he fell to the ground and got back up to keep running away from the officers. Additionally, in his later conversations with several officers after being handcuffed, Bostic admitted to driving the wrong way down the highway and running away from the officers pursuing him.

**Exhibits**: 1, 3, 4, 5, 6, 7, 13, 14

**Allegation:** *"Police used unnecessary excessive force by improperly yanking and removing taser prongs."* (Doc. 5 at 2).

**Findings:** Bostic asked for the taser prongs to be removed. Officer Wood appears to have assisted in removing at least one of the taser prongs. WCSO and KHP did review photos of Bostic's chest after the taser prongs were removed, which show a small amount of blood

8

on the lower left-hand side of his abdomen. An officer remarked to the EMT who checked Bostic out on the scene that they had already removed the prongs according to protocol. Finally, when he was being checked out by an EMT at the scene, Bostic did not make any complaints about the taser except to point out where the prongs hit him. Nor did he make any complaints to the EMT about being in pain or being injured.  The video evidence of this interaction contradicts Bostic's claim that "E.M.S. reject[ed] medical assistance on the scene."

**Supporting Exhibits:** 5, 6, 7, 8, 9


**Allegation**: *Bostic's iPhone 12 was taken from him by a deputy and not returned to him or his family*. [DOC. 5 at 6-7].

**Findings**: Bostic told police officers that his photo identification was attached to the back of his phone, which he claimed was in the Kia he was driving. Officers do appear to have found a phone matching Bostic's description, except that it did not have an identification card on the back. Bostic claimed that it was his phone, but according to Officer Ridgley's BWC footage he appears to have been looking at it from quite far away. It is unclear whether officers ever found Bostic's phone.

**Exhibit(s)**: 5


## Whether Action Can or Should be Taken

No action can or should be taken by WCSO or KHP to resolve the subject matter of Plaintiff's complaint.

## Whether Other Like Complaints Should Be Considered

WCSO and KHP do not know of any other like complaints that are related to and should be considered together with this complaint.

Respectfully Submitted,

/s/Dilini Lankachandra
Dilini Lankachandra, #30402
Unified Government of Wyandotte
     County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
Bus. Tel:(913) 573-5060
Fax:  (913) 573-5243
Email:  dlankachandra@wycokck.org
*Attorney for Interested Party Wyandotte*
*     County Sheriff's Office*

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Interested Party Kansas*
*Highway Patrol*

## INDEX OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | Incident Narrative Report from Master Trooper Garcia |
| 2 | Dash-board Camera Footage from Officer Sam Irwin |
| 3 | Incident Narrative Report from Trooper Irwin |
| 4 | Body-worn Camera Footage from Officer Ridgley (1 of 2) |
| 5 | Body-worn Camera Footage from Officer Ridgley (2 of 2) |
| 6 | Body-worn Camera Footage from Officer Solomon |
| 7 | Body-worn Camera Footage from Officer Wood |
| 8 | Pictures of Bostic Chest and Taser Markings |
| 9 | Dash-board Camera Footage from Trooper Ramirez |
| 10 | KHP Active Pointing / Response to Resistance Report |
| 11 | Kansas City, Kansas Arrest Information Sheet |
| 12 | Wyandotte County Jail Booking Report |
| 13 | KHP Policy ENF-04 Response to Resistance |
| 14 | KHP Policy OPS-16 Pursuits |

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, with a hard copy delivered via first-class mail to the Plaintiff Da'Jhon Bostic at the Western Reception & Diagnostic Correctional Center, 3401 Faraon, St. Joseph, Missouri 64506.

/s/Dilini Lankachandra
Dilini Lankachandra