IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAJHON AMARIA BOSTIC,**

            **Plaintiff,**

v.                                                          **CASE NO. 25-3056-JWL**

**WYANDOTTE COUNTY
POLICE DEPARTMENT, et al.,**

            **Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff brings this pro se action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff is detained at the Jackson County Detention Center in Kansas City, Missouri.

On May 13, 2025, the Court entered a Memorandum and Order (Doc. 7) ("M&O") directing the Wyandotte County Sheriff's Department ("WCSD") and the Kansas Highway Patrol ("KHP") to prepare a *Martinez* Report. The *Martinez* Report (Doc. 18) has now been filed. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 7, at 7.) The Court will therefore screen the Complaint in light of the Report. The Court's screening standards are set forth in the M&O. (Doc. 7, at 2-4.)

**I. Nature of the Matter Before the Court**

The Complaint is based on Plaintiff's arrest on February 10, 2024. Plaintiff states that he was running from law enforcement when he was given a direct order to stop. He alleges that he complied with the order but was still tased. Officers then improperly removed the taser prongs by

yanking them out, leaving permanent scars on Plaintiff's body. He asserts that the officers used "unnecessary excessive force." (Doc. 5, at 3.)

In an attachment to the operative Complaint, Plaintiff provides additional details. He states that Wyandotte County police officers were in pursuit of a Kia Sportage that had been reported stolen from Kansas City, Missouri, with the driver (Plaintiff) being a suspect in an attempted aggravated assault on a law enforcement officer. (Doc. 5-1, at 2.) The Kansas Highway Patrol ("KHP") joined in the pursuit at some point, conducting a "tactical vehicle intervention causing the pursuit to come to an end." *Id*. Plaintiff was apprehended by the KHP "after a short foot pursuit." *Id*. He claims that he was only ordered to stop after he had fallen to the ground and was surrounded by police officers with tasers drawn. *Id*. at 3. Plaintiff asserts that he was not given "the appropriate amount of time to surrender nor was he given a warning before he was tased by state police." *Id*. Plaintiff further alleges that his iPhone 12 was taken by a deputy and not returned to him or his family. *Id*. at 6-7.

Plaintiff names as defendants the Wyandotte County Police Department; John Doe #1, police officer; and John Doe #2, police officer. He requests relief in the form of nominal and punitive damages and reimbursement for the loss of his iPhone 12 (valued at $675 to $750).

## II. The *Martinez* Report

According to the Report, Plaintiff was being pursued by the Kansas City, Missouri Police Department for Aggravated Assault of a law enforcement officer. (Doc. 18, at 2.) He was driving a black Kia Sorrento. When Plaintiff crossed the state line into Kansas, three Kansas Highway Patrol troopers became involved. *Id*. at 3. Plaintiff was traveling the wrong way down Kaw Drive with his headlights turned off. *Id*. KHP Trooper Irwin intervened with his vehicle to stop the Kia. *Id*. Irwin then witnessed Plaintiff exit the driver's seat and run eastbound. *Id*. Irwin exited his

patrol vehicle, identified himself as a police officer, and commanded Plaintiff to stop. *Id*. He did not stop. Master Trooper Garcia also pursued Plaintiff through a grassy area off of the highway ramp and down a hill. *Id*. Garcia and Irwin saw Plaintiff fall to the ground and immediately get back up. *Id*. When he got up, Garcia tased him, which cause Plaintiff to fall to the ground. *Id*.

KCMO police officer Solomon arrived at the scene just as Plaintiff was tased. *Id*. at 4/ Solomon's body-worn camera ("BWC") footage shows officers ordering Plaintiff to get on the ground and shows that Plaintiff did not immediately comply. *Id*. The footage shows an officer announcing to Plaintiff that he was going to be tased. *Id*. He was then tased. *Id*.

KCMO police officers Wood and Ridgley arrived on the scene after Plaintiff was tased and on the ground. According to Wood's BWC footage, an officer said to Plaintiff, "Yeah, we had to tase you, you wouldn't listen." *Id*. Solomon and Ridgley's BWC footage shows that Plaintiff said, "Woooo! Take that out please. That shit hurts. That shit hurts, bro." *Id*. at 5. Wood's BWC footage then shows Wood helping to remove at least one of the taser prongs from Plaintiff's torso. *Id*.

As the officers were walking Plaintiff back to the highway, Ridgley's BWC footage shows that Plaintiff remarked, "Why did he tase me? Who tased me? I literally stopped for y'all." *Id*. Plaintiff also said, "I was driving crazy but I did not try to hit you guys." *Id*.

A short time later, an Emergency Medical Technician ("EMT") from the Kansas City, Kansas Fire Department arrived to check Plaintiff and the two passengers from the Kia. *Id*. An officer told the EMT that they had already removed the taser prongs, according to protocol. *Id*. at 6. The EMT's interaction with Plaintiff was captured by KHP Trooper Ramirez's dash cam and Ridgley's BWC. *Id*. Neither footage captured Plaintiff making any complaints to the EMT, other than showing the EMT where the prongs hit him. *Id*. Ramirez then checked Plaintiff over and

took pictures of his chest. *Id.* There was only a small amount of blood on his lower left abdomen. *Id.*

Plaintiff was taken to the Wyandotte County Adult Detention Center (WCADC") and booked in for (1) Fleeing or attempting to elude a law enforcement officer, 1st conviction; (2) Aggravated assault of LEO; Use of a deadly weapon; (3) Interference with LEO; Obstruct or resist in misdemeanor case; (4) Possession of stolen property; Value $1,000 to $25,000; and (5) Criminal possession of a firearm by a felon. *Id.* at 7.

### III. Discussion

#### A. Excessive Force

As explained in the M&O, "[e]xcessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id.* (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id.* (citation omitted).

Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396).

In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id.* (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

The Court has viewed the BWC and dash cam footage submitted as exhibits to the Report, and finds that the Report is largely accurate in describing the incident as captured on the videos. Plaintiff has not stated a plausible claim for excessive force. Considering the reasonableness factors outlined in *Vette*, Plaintiff was driving a stolen vehicle, he led LEOs on a high-speed chase, he posed a threat to the safety of others by repeatedly swerving into oncoming lanes of traffic and driving the wrong way on an off ramp from I-70 with the headlights out, he refused to stop and

had to be rammed by a police vehicle to forcibly stop his vehicle, he immediately got out of the vehicle and took off running, he was pursued and ordered to stop, and he did not stop and surrender. Plaintiff appears to be actively attempting to flee at the precise moment the officers employed the challenged use of force, and the force ceased once his resistance ceased. While Plaintiff may have made the decision to surrender, his actions did not reflect that decision at the time he was tased.

As for the removal of the taser prongs, the video shows Plaintiff asking to have the prongs removed and an officer responding to his request. The video does not show officers yanking out the prongs. The video also shows that EMS was at the scene and briefly looked at Plaintiff's torso.

The Court finds that Plaintiff's excessive force claim is subject to dismissal.

### B. Improper Defendant

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).

The Wyandotte County Police Department is not a proper defendant to a § 1983 action. This defendant is subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D.N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12, 1992)).

### C. Property Claim

Plaintiff mentions in his Complaint that his cell phone was taken by a deputy and not returned to him or his family. He seeks damages in the amount of the value of the phone.

To the extent Plaintiff seeks damages for the loss of his personal property, he does not state a claim for federal relief. It is settled that neither a negligent nor an unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property whet existence of state tort claims process provided due process).

Kansas provides post-deprivation remedies to persons who believe they have suffered a tortious loss at the hands of state officials. *Roman v. FNU LNU Unknown State & Loc. Offs., Barton Cnty., Kan.*, No. 12-3065-SAC, 2012 WL 1970384, at *4 (D. Kan. June 1, 2012). Courts in this district have determined that the Kansas procedures are adequate post-deprivation remedies for the type of harm alleged in plaintiff's complaint. *Herndon v. City of Park City, Kansas,* No. 07-1065-MLB, 2007 WL 3171524, at *3 (D. Kan. Oct. 25, 2007) (citing, among other authorities, Kansas decisions that have recognized the availability of sufficient post-deprivation procedures, including *Wilkins v. Skiles,* No. 02-3190-JAR, 2005 WL 3084902, at *8 (D. Kan. Oct. 20, 2005) (finding that due process claim was barred because the claim was based on an alleged failure to follow state mandated procedures and plaintiff had an adequate remedy under Kansas law based on a replevin action or an action for conversion); *Haynes v. Attorney General of Kan.*, No. 03-4209- RDR, 2005 WL 2704956, at *5 (D. Kan. Aug. 6, 2005) (finding that due process claim was barred because the claims were based on random, unauthorized acts, and plaintiff had an adequate state law remedy under the Kansas Tort Claims Act or a claim for conversion); *McCormick v. City*

7

*of Lawrence,* 253 F. Supp. 2d 1172, 1198–99 (D. Kan. 2003) (same)). These remedies provide all the process that was due to Plaintiff.

Plaintiff's allegations plainly indicate that he has not utilized the state court remedies that are available and fail to suggest that the available state-court remedies were ineffective. Plaintiff's remedy is to pursue his claim of property loss or deprivation in the state courts.

In sum, the Court finds that Plaintiff fails to state a plausible federal constitutional claim related to the loss of his cell phone.

## IV.  Conclusion

In light of the *Martinez* Report and on further review of the Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted. Plaintiff will be given an opportunity to respond to the *Martinez* Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **December 22, 2025,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed for failure to state a claim.

**IT IS SO ORDERED**.

**Dated November 20, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**