FILED
U.S. District Court
District of Kansas
02/13/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAJHON AMARIA BOSTIC,

                Plaintiff,

    v.                                      CASE NO. 25-3056-JWL

WYANDOTTE COUNTY
POLICE DEPARTMENT, et al.,

                Defendants.

### MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is currently in the custody of the Missouri Department of Corrections. The Court granted Plaintiff leave to proceed in forma pauperis. (*See* Doc. 8.)

Plaintiff alleges that he was subjected to excessive force when he was arrested on February 10, 2024, after fleeing law enforcement officers in a vehicle and on foot.

After ordering, receiving, and reviewing a *Martinez* Report in this case, the Court entered a Memorandum and Order to Show Cause (Doc. 22) ("MOSC") ordering Plaintiff to show good cause by December 22, 2025, why his Complaint should not be dismissed for failure to state a claim. This matter is before the Court on Plaintiff's responses to the MOSC (Docs. 24, 28) and Plaintiff's Second Amended Complaint (Doc. 31) ("SAC").[1]

In the MOSC, the Court found that Plaintiff failed to state a claim for excessive force. "To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a

---

[1] Plaintiff filed an amended complaint (Doc. 30) before filing the SAC on February 12, 2026. The Court has treated the SAC as the operative complaint.

1

seizure occurred and that the seizure was unreasonable." *Id*. (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id*. (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id*. (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396).

In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id*. (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

The Court considered the reasonableness factors outlined in *Vette* and found that Plaintiff failed to state a claim for excessive force.  Plaintiff was driving a stolen vehicle, he led LEOs on a high-speed chase, he posed a threat to the safety of others by repeatedly swerving into oncoming lanes of traffic and driving the wrong way on an off ramp from I-70 with the headlights out, he refused to stop and had to be rammed by a police vehicle to forcibly stop his vehicle, he immediately got out of the vehicle and took off running, he was pursued and repeatedly ordered to stop, and he did not stop and surrender.  While Plaintiff may have made the decision to surrender, his actions did not appear to reflect that decision at the time he was tased.

As for the removal of the taser prongs, the video shows Plaintiff asking to have the prongs removed and an officer responding to his request.  The video does not show officers yanking out the prongs.  The video also shows that EMS was at the scene and briefly looked at Plaintiff's torso where the prongs had been.

The MOSC further found that Plaintiff did not state a federal constitutional claim for the loss of his cell phone.  It is settled that neither a negligent nor an unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property where existence of state tort claims process provided due process).  The Court concluded that Plaintiff's remedy is to pursue his claim of property loss or deprivation in the state courts.

Plaintiff has filed responses to the MOSC and the SAC.  He continues to assert that the taser prongs were improperly removed from his torso.  Plaintiff alleges that he has scars and

ongoing pain from the taser and suffers from mental distress as a result of the use of force incident. Plaintiff also argues that he was complying with the command to stop when he was tased and points out that the video footage provided in the *Martinez* Report does not show the moments immediately before he was tased.  (Doc. 25, at 4-5.)   Plaintiff asserts that he was not given "the appropriate amount of time to surrender and put [his] hands up BEFORE [he] was tazed."  (Doc. 24, at 2, 3.)  He also provides additional explanation for fleeing from the police ("I was in fear for my life when I fled in the stolen vehicle because I was previously out on felony bond").

Plaintiff attempts to argue that the loss of his cell phone should state a claim under the Fourth Amendment as a seizure without a warrant.  (Doc. 25, at 3-4.)  However, Plaintiff is not complaining about the use of the cell phone as evidence but rather seeks the return or replacement of his phone.  In the SAC, Plaintiff alleges the loss of his cell phone violates the Fourteenth Amendment.  Plaintiff's due process claim related to the loss of his cell phone is dismissed.  His remedy is to pursue his claim of property loss or deprivation in the state courts, as explained in the MOSC.

Plaintiff concedes in response to the MOSC that the Wyandotte County Police Department is not a proper defendant to a § 1983 action.  In the SAC, Plaintiff names two defendants, Officer Wood and Master Trooper Garcia.  (Doc. 31, at 1.)  He asserts that Garcia ordered Plaintiff to stop, Plaintiff fell down, and Garcia tased him without giving him time to put up his hands and surrender. *Id*. at 2.  Plaintiff alleges that Wood then ripped the taser prongs out of Plaintiff's torso, resulting in "permanent body pain" and emotional distress.  *Id*. at 2, 4.

Plaintiff disputes the allegations in the *Martinez* Report, maintaining his version of the events and his allegations set forth in his SAC.  The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*,

4

829 F.2d 1005, 1007 (10th Cir. 1987). The *Martinez* report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n.3 (10th Cir. 1983)). The Court "cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits." *Id.* at 1109. "Furthermore, '[a] bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* Report are less specific or well-documented than those contained in the report.'" *Bellamy v. Kansas*, 2024 WL 3718065, at n.5 (10th Cir. Aug. 8, 2024) (unpublished) (quoting *Hall*, 935 F.2d at 1109).

The Court is unable to resolve the factual disputes at this stage of the proceedings. Therefore, the Court finds that Plaintiff's excessive force claim survives the screening required by 28 U.S.C. § 1915A(a) and further finds that a responsive pleading is necessary. Because Plaintiff is proceeding in forma pauperis, the Clerk of the Court must undertake service of process under 28 U.S.C. § 1915(d).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's claim for violation of his Fourteenth Amendment rights as a result of the loss of his cell phone is **dismissed** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's excessive force claim survives the Court's screening under 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Court directs the Clerk of the Court to prepare and issue waiver of service forms for Defendants Garcia and Wood pursuant to Fed. R. Civ. P. 4(d) to be served upon the defendants at no cost to Plaintiff.

**IT IS SO ORDERED**.

**Dated February 13, 2026, in Kansas City, Kansas.**

>	**S/  John W. Lungstrum**
>	**JOHN W. LUNGSTRUM**
>	**UNITED STATES DISTRICT JUDGE**